Filed 4/23/14  P. v. Singleton CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>JANELLE SINGLETON,<br><br>    Defendant and Appellant. | A137105<br><br>(Contra Costa County<br>Super. Ct. No. 51207596) |

## I.  INTRODUCTION

Janelle Singleton was charged with second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)) and second degree burglary (Pen. Code, §§ 459, 460, subd. (b)) based on an incident that occurred at the Sun Valley Mall in Concord.  At her jury trial, Singleton conceded she committed burglary by stealing two pairs of jeans from a store in the mall, but she disputed the robbery charge.  The jury found Singleton guilty on both counts and the trial court sentenced her to three years probation with the condition that she serve 90 days in jail.

The issues on appeal pertain only to Singleton's robbery conviction.  She contends the trial court erred by (1) giving an irrelevant and misleading jury instruction regarding the duration of a robbery; (2) failing to give a unanimity instruction; and (3) failing to properly answer a jury question regarding the force or fear requirement of robbery.  In addition, Singleton contends that the prosecutor committed misconduct during closing

1

argument by mischaracterizing the People's burden of proving the force or fear requirement of robbery. We reject these contentions and affirm the judgment.

## II. STATEMENT OF FACTS

### A. *The Prosecution Case*

On November 4, 2011, Singleton was in a store called "Buckle" in the Sun Valley Mall. Edmund Zimmer was the store manager that day. Zimmer saw Singleton take two pairs of jeans from a store table, put them in a large bag that looked like a "beach bag," and leave the store without paying for them.

When Singleton exited the store, she set off a loud alarm. She was about 15 feet outside the store, when Zimmer called out to her and went after her. As he caught up to Singleton, Zimmer identified himself as the store manager and asked her to stop and let him check the contents of her bag, or otherwise return to the store with him. Singleton looked Zimmer in the eyes, then turned and began to walk away. Zimmer grabbed the large bag she was carrying and tried to take it from her.

As Zimmer pulled on the bag, Singleton held on to it and fell to the ground, "on her rear end," with her feet up in the air. She then leaned back and kicked Zimmer several times in his groin, ankles and legs. Zimmer let go of the bag, and Singleton got up and began to run to an exit from the mall about 100 feet away. Zimmer followed her out of the mall, telling her to stop, speaking loudly and trying to draw attention to himself and what he was doing.

When they were both outside the mall, Singleton threw her bag under a parked car and continued to walk away. Zimmer was going to stop for the bag until he saw that Singleton was trying to put something down the front of her pants. Thinking the item had been stolen from Buckle, Zimmer continued to follow Singleton, again telling her to stop. When he caught up to her, Zimmer asked for the item, but she refused to give it to him. Zimmer, who was directly behind Singleton, reached over her shoulder to take the item, saw that it was a wallet and thought Singleton had stolen it from Buckle. Singleton grabbed his arm, bit him several times (causing him to bleed) and also pulled his hair.

2

Zimmer then yanked his arm away, grabbed Singleton by her shoulders and placed her on the ground. Shortly thereafter, the police arrived and arrested Singleton.

An off-duty police officer named Joshua Evans was shopping in the mall at the time of this incident. He and a mall security officer heard and saw some of these events and followed Zimmer and Singleton out of the mall into the parking lot. When Singleton saw them she began to run away. Evans heard Zimmer identify himself to Singleton as store security and yell for her to stop. He and the mall security officer also yelled at her to stop, but she did not. Zimmer caught up with Singleton first and, when Evans reached both of them, Singleton was standing, but she sat down when Evans asked her to do so. Evans testified that Singleton had no visible injuries. While Evans waited for the police to arrive, Zimmer went back to look for Singleton's bag.

When Concord Police Officer Juan Piceno arrived at the scene, Singleton identified a large black purse as hers. The purse contained a medium sized bag that was lined with foil. Piceno recognized that medium sized bag as a "booster bag" which is commonly used to prevent alarms from sounding when clothing still containing sensors is taken out of the store. Singleton's "booster bag" contained a set of wire cutters, and the large purse itself contained another pair of wire cutters and two pairs of jeans with the store's price tags and sensors still on them.

Singleton was arrested and transported to the Concord jail where she waived her *Miranda*[1] rights and agreed to speak with Officer Piceno. She told him she went to Buckle because she heard they had nice clothes; she took two pairs of jeans and walked out of the store, causing the alarm to sound; Zimmer approached her and asked if he could see inside her purse, and she told him no. At that point, Singleton reported, Zimmer grabbed for her purse and then she "kicked" at him but did not make "actual contact" because her leg went between his legs. Nevertheless, her kicks caused Zimmer to let go of the bag, which enabled her to exit the mall. But Zimmer caught up to her in the parking lot, pushed her on the ground and took her wallet. Singleton admitted to the

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

officer that she had pulled Zimmer's hair and "scraped her teeth against his arm" during the altercation in the parking lot. She also told Piceno that she thought the foil bag would prevent the store alarm from going off.

**B.** *The Defense Case*

Singleton was the only defense witness at trial. She admitted that she went to the Buckle store to steal some jeans, and that she had constructed the foil-lined bag. She testified that Zimmer caught up with her outside the store, and that she denied his request to look into her bag and just kept walking. Singleton knew Zimmer was a Buckle employee and that he was not trying to steal anything from her but just wanted to retrieve the jeans she had stolen. Nevertheless, she refused his request and decided not to drop the bag because she wanted the jeans.

Singleton testified that when she started to walk away from Zimmer he grabbed her shoulder with one hand and a strap of her purse with the other, pulled with both hands and was "trying to yank me down." When Zimmer pulled on her bag, she pulled "right back" because she was trying to get away. She started to lose her balance, but did not actually fall down. Instead, she kicked her foot down as she attempted to stand back up and get away. As Singleton explained, "I attempted—because my balance was thrown off, I attempted to stand back up and try to, you know, get away from this guy, so I kicked down." Singleton denied that she attempted to kick Zimmer between the legs; she claimed she was simply kicking off the ground in order to get herself back standing upright. Singleton also denied ever telling Officer Piceno that she had tried to kick Zimmer.

Singleton told the jury that Zimmer let go of her bag because another Buckle employee yelled at him to just let Singleton go. For no other reason, Singleton testified, Zimmer simply let her go, but then he followed her as she tried to exit the mall. Singleton testified that at that point she was just trying to "get away from him because I didn't want the stuff anymore, like, I just wanted him to get off of me." However, she did not drop the bag because she wanted to "ditch the stuff outside of the mall."

4

As Singleton headed toward her car in the parking lot, she was "freaked out" because she knew she was going to get caught. She wanted to "ditch" the bag so she would not get caught holding the stolen jeans. She knew Zimmer was following her but she just kept "speed walking," and she did not drop the bag because she wanted to get her wallet out first. During her account of the events, Singleton never testified that she actually ditched the bag or what she was thinking when she threw it under a parked car. However, she did tell the jury that her plan was to get out of the mall so she could ditch the bag where Zimmer would not see it so that if she got arrested "they wouldn't find it."

Singleton's testimony about the second physical altercation between herself and Zimmer, the fight in the parking lot, was very brief. She told the jury: "I had my wallet, and I was trying to hide my wallet. That's when he wrestled me for my wallet and pushed me down to the ground." Singleton testified that by that point in the incident, her only concern was to get away without getting in trouble or being identified.

## C. *Robbery Jury Instructions*

### 1. *CALCRIM No. 1600*

The trial court used a modified version of CALCRIM No. 1600 to instruct the jury regarding the elements of robbery. That instruction stated:

"The defendant is charged in Count One with robbery in violation of Penal Code section 211. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took property that was not her own; [¶] 2. The property was taken from another person's possession and immediate presence; [¶] 3. The property was taken against that person's will; [¶] 4. The defendant used force or fear to take the property or to prevent the person from resisting; [¶] AND [¶] 5. When the defendant used force or fear to take the property, she intended to deprive the owner of it permanently.

"The defendant's intent to take the property must have been formed before or during the time she used force or fear. If the defendant did not form this required intent until after using the force or fear, then she did not commit robbery.

"A person takes something when he or she gains possession of it and moves it some distance. The distance moved may be short.

5

"The property taken can be of any value, however slight.

"A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person. A store employee who is on duty has possession of the store owner's property.

*"Any force or fear caused by the Defendant after she has dispossessed property that she is accused of stealing cannot by itself satisfy the requirement of taking the property by force or fear but can be considered as evidence as to any of her prior actions if the jury deems that appropriate.* (Italics added.)

"Property is within a person's immediate presence if it is sufficiently within his or her physical control that he or she could keep possession of it if not prevented by force or fear.

"An act is done against a person's will if that person does not consent to the act. In order to consent, a person must act freely and voluntarily and know the nature of the act.

"If you find the defendant guilty of robbery, it is robbery of the second degree."

### 2.     *The Special Instruction About the Second Altercation*

In the instruction which we have quoted above, we italicized a paragraph that is not part of the pattern instruction. That italicized paragraph is a special pinpoint instruction that the trial court added to the text of CALCRIM No. 1600 in response to a request by the defense that the jury be explicitly instructed that the second altercation between Singleton and Zimmer that occurred in the mall parking lot could not be used to establish an element of the robbery charge, although the incident could be considered for some other purpose.

The content of this special instruction was not discussed during the hearing on jury instructions and we find nothing in this record to suggest that there was any dispute about it. The instruction is supported by the legal principle that a defendant who uses force *only* after he or she has abandoned the victim's property may be guilty of theft but not of robbery. (*People v. Pham* (1993) 15 Cal.App.4th 61, 68.) This principle was also the

6

basis for an in limine order that the court made at the jury instruction hearing. That order precluded the parties from arguing to the jury that the second physical altercation between Singleton and Zimmer established the force or fear element of the robbery charge.

As with the special jury instruction, there was no objection to the in limine order. Instead, in light of the special instruction and the in limine order, the trial court, prosecutor and defense counsel all agreed that a unanimity jury instruction was not required.

### 3. *The Escape Rule*

At the request of the prosecutor, the trial court used CALCRIM No. 3261, which is titled "the Escape Rule," to instruct the jury about the duration of a robbery.

The court's version of CALCRIM No. 3261 stated: "Now, the crime of robbery, *if it exists*, continues until the perpetrator has actually reached a temporary place of safety. A perpetrator has reached a temporary place of safety if he or she has successfully escaped from the scene, and he or she no longer is being chased, and he or she has unchallenged possession of the property. [¶] *Notwithstanding the foregoing, the People have the burden of proving each element of the crime of robbery as set forth in my previous instruction.*" (Italics added.)

The text we have italicized in this quoted instruction is not standard language in CALCRIM No. 3261, but was added by the trial court for this case. The defense did not object to the escape rule instruction, either when the prosecutor requested it or when the court asked the parties to review the language of the instruction itself.

### D. *Jury Deliberations*

During deliberations, the jury submitted a set of four questions about the robbery charge. It asked:

1. "In depth explanation for #4 in Robbery—'who is the person that is resisting[?]' "

2. "What is definition of 'force or fear'[?]"

3. "If 'force' is added for any reason to theft, is that robbery?"

7

4. "Does the 'intent' of force make a difference?"

The trial court discussed these questions with trial counsel off the record outside the presence of the jury. Then, the court provided the jury with a typewritten response to its questions which stated:

"1. The alleged 'victim' is the person resisting in the provision of element '4.' The 'resisting' means resisting the loss of his or her property.

"2. There is no 'legal' definition for 'force' or 'fear'. The jury should apply the 'ever[y] day meaning' to those terms.

"3. The 'reason' that is to be established must be one of those set forth in element '4': 'to take the property' or 'to prevent the person from resisting' (as indicated above).

"4. The 'intent' required is set forth in element '5.' "

After the jury received these answers and deliberated a while longer, it asked to review specific excerpts of trial testimony from three witnesses, Singleton, Zimmer and Evans. The requested testimony, which the court provided, pertained only to events that occurred inside the mall, i.e., before Singleton went into the parking lot where the second physical altercation with Zimmer occurred.

After deliberating for less than a full day, the jury returned a verdict finding Singleton guilty of second degree robbery and second degree burglary.

## III. DISCUSSION

### A. *The Escape Rule Jury Instruction*

Singleton's primary contention on appeal is that the trial court committed prejudicial error by using the escape rule to instruct the jury about the duration of a robbery.

#### 1. *Issues Presented and Standard of Review*

As reflected in our factual summary, the escape rule instruction told the jury that the crime of robbery continues until the perpetrator reaches a "temporary place of safety," but that this rule did not alter the People's burden of proving each of the elements of the robbery charge which were set forth in the court's previous instruction.

8

On appeal, Singleton does not contend that either the escape rule itself or the specific instruction that the trial used in this case was an incorrect statement of the law. Instead, her theory is that the escape rule was irrelevant and that instructing the jury about that rule led them to misapply the law.[2]

"It is error for a court to give an 'abstract' instruction, i.e., 'one which is correct in law but irrelevant[.]' [Citation.]" (*People v. Rowland* (1992) 4 Cal.4th 238, 282.)  The giving of an irrelevant instruction "is usually harmless, having little or no effect 'other than to add to the bulk of the charge.'  [Citation.]  There is ground for concern only when an abstract or irrelevant instruction creates a substantial risk of misleading the jury to the defendant's prejudice." (*People v. Rollo* (1977) 20 Cal.3d 109, 123, questioned on another ground in *People v. Edwards* (2013) 57 Cal.4th 658, 723.)

To evaluate this claim we examine jury instructions as a whole to determine whether there is a " ' "reasonable likelihood" ' " the jury misunderstood the instructions in the manner suggested by Singleton.  (*People v. Huggins* (2006) 38 Cal.4th 175, 192; *People v. Clair* (1992) 2 Cal.4th 629, 662-663.)  We presume jurors are intelligent people capable of understanding instructions and applying them to the facts of the case.  (*People v. Carey* (2007) 41 Cal.4th 109, 130.)

### 2. *The Instruction Was Relevant*

Singleton's first contention is that the escape rule instruction was irrelevant to the robbery charge in this case.  We disagree.

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  (Pen. Code, § 211.)  " 'The taking element of robbery has two necessary elements, gaining possession of the victim's property and asporting or carrying away the loot.' [Citation.]"  (*People v. Hill* (1988) 17 Cal.4th 800, 852.)  The duration of the

---

[2]  Singleton acknowledges that her trial counsel did not object to this instruction, but she maintains the issue is not waived because it affects a fundamental due process right and presents a pure question of law.  Singleton also contends that if an objection was required, her trial counsel rendered ineffective assistance by failing to do so.

robbery continues so long as the loot is being carried away to a place of temporary safety although the commission of a robbery does not require that the robber actually escape to a place of temporary safety. (*People v. Pham, supra,* 15 Cal.App.4th at p. 68.)

In this case, the duration of the charged robbery was a relevant issue for the jury because Singleton did not use any force when she took the jeans and carried them out of the Buckle store, but the prosecution produced evidence that she did use force while attempting to escape with the goods when she resisted Zimmer's efforts to retrieve the stolen jeans from her while she was still in the mall.

"A defendant who does not use force or fear in the initial taking of the property may nonetheless be guilty of robbery if he uses force or fear to retain it or carry it away in the victim's presence. [Citations.]' [Citation.] That is, '[a] robbery is not completed at the moment the robber obtains possession of the stolen property. The crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property. . . . [A] robbery occurs when defendant uses force or fear in resisting attempts to regain the property or in attempting to remove the property from the owner's immediate presence regardless of the means by which defendant originally acquired the property.' [Citation.]" (*People v. McKinnon* (2011) 52 Cal.4th 610, 686-687.)

When viewed in light of the trial evidence, these rules demonstrate that the escape rule instruction was relevant to the jury's inquiry because it clarified that the force element of robbery could be established by evidence that Singleton used force after she left the store with the stolen property when she used force to resist Zimmer's efforts to retrieve the stolen jeans. Singleton's argument that the escape rule instruction was not relevant ignores the actual facts of this case; she never acknowledges that the evidence she used force to commit robbery pertained to her conduct during asportation rather than her initial taking of the stolen goods.

Instead, Singleton takes the position that the escape rule instruction applies in only one discrete situation, cases in which the defendant is separately charged with an "ancillary consequence" of a crime. The rule does often come into play in that situation.

10

(See, e.g., *People v. Wilkins* (2013*)* 56 Cal.4th 333 [escape rule instruction should be given in felony-murder case based on theory that victim killed during commission of burglary].)  But Singleton does not cite any case which precludes instruction on the escape rule in a case like this when the jury is asked to determine whether the defendant used force while attempting to escape with the stolen goods.

Singleton directs our attention to the Bench Note for the pattern escape rule instruction, CALCRIM No. 3261, which states:  "Give this instruction whenever the evidence raises an issue over the duration of the felony and another instruction given to the jury has required some act 'during the commission or attempted commission' of the felony."  (CALCRIM No. 3261, Bench Notes, quoting *People v. Cavitt* (2004) 33 Cal.4th 187, 208.)  This Note supports our conclusion that the escape rule is relevant here.  First, the evidence in this case did "raise[] an issue over the duration of the felony" because it showed that the defendant used force against the victim in order to retain possession of the stolen goods while she was trying to escape.  Second, "another instruction," here CALCRIM No. 1600, required an act of force or fear "during the commission . . . of the felony."  (*Ibid*.)

Furthermore, to the extent Bench Notes are pertinent, Singleton overlooks the Bench Note for CALCRIM No. 1600, which states that "[i]f there is an issue as to whether the defendant used force or fear during the commission of the robbery, the court may need to instruct on this point," and then directs the user's attention to CALCRIM No. 3261, the escape rule instruction.  This Bench Note also references *People v. Estes* (1983) 147 Cal.App.3d 23, 28 (*Estes*).

Although *Estes, supra*, 147 Cal.App.3d 23, did not involve a challenge to a jury instruction, this case reinforces our conclusions here.  The *Estes* defendant was convicted of robbery of items he took from a Sears department store based on evidence that he "forceably resisted the security guard's efforts to retake the [stolen] property and used that force to remove the items from the guard's immediate presence."  (*Id.* at p. 27.)  On appeal, the defendant argued that he did not commit robbery because his assaultive

11

behavior was not contemporaneous with the taking of the items from the store.  Rejecting this claim, the court summarized the relevant law:

"The crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety.  It is sufficient to support the conviction that appellant used force to prevent the guard from retaking the property and to facilitate his escape.  The crime is not divisible into a series of separate acts.  Defendant's guilt is not to be weighed at each step of the robbery as it unfolds.  The events constituting the crime of robbery, although they may extend over large distances and take some time to complete, are linked by a single-mindedness of purpose.  [Citation.]  Whether defendant used force to gain original possession of the property or to resist attempts to retake the stolen property, force was applied against the guard in furtherance of the robbery and can properly be used to sustain the conviction."  (*Estes, supra*, 147 Cal.App.3d at p. 28.)

These same principles apply to the evidence in this case and they undermine Singleton's contention that the escape rule instruction was irrelevant.

### 3.    *The Instruction Was Not Misleading*

Turning to the second prong of Singleton's error analysis, she insists the escape rule instruction was prejudicially misleading.  But again, she ignores the relevant evidence pertaining to the first altercation inside the mall.  Instead, Singleton focuses exclusively on the second altercation between herself and Zimmer which took place in the parking lot.  Her theory is that the escape rule instruction was misleading because it invited the jury to convict her based on her use of force during the "second scuffle," and that second scuffle could not satisfy the force element of robbery because it occurred *after* Singleton had abandoned the stolen jeans.

For purposes of this appeal, we accept Singleton's contention that her conduct during her second altercation with Zimmer did not constitute force for purposes of proving the robbery charge because she abandoned the stolen property before that event occurred.  (See *People v. Pham, supra*, 15 Cal.App.4th at p. 68.)  Although we question whether the evidence conclusively establishes that Singleton truly abandoned the stolen

12

property before that second altercation, it appears that fact was established prior to trial. As noted in our factual summary, the trial court made an in limine order which precluded the parties from characterizing Singleton's conduct during the second altercation as the force required to commit robbery and it also gave a special jury instruction to that same effect. Furthermore, in their appellate brief the People concede that Singleton abandoned the stolen property before the second altercation occurred.

Thus, the question is whether it is reasonably likely that the jury misunderstood the escape rule instruction as authorizing them to find that Singleton used force to commit robbery by biting and hitting Zimmer during the second altercation in the parking lot. (*People v. Clair, supra*, 2 Cal.4th at pp. 662-663.) Several factors indicate that the jury was not misled in this way.

First, when read in context, the escape rule instruction did not authorize the jury to base the robbery conviction on the second scuffle. To the contrary, the court modified CALCRIM No. 3261 to explicitly clarify that the escape rule was not an alternative basis for proving Singleton used force, but that it applied only in conjunction with CALCRIM No. 1600, the previous instruction the court gave which set forth the elements of robbery and the prosecutor's burden of proving those elements. CALCRIM No. 1600 told the jury that it had to find that Singleton used force or fear *when* she took the property or prevented another person from resisting her efforts to retain the property. That instruction also required the jury to find that Singleton intended to permanently deprive the owner of his property *when* she used force or fear to either take or retain possession of the property from the victim. In addition, the trial court modified CALCRIM NO. 1600 by adding a paragraph which instructed the jury: "Any force or fear caused by the Defendant after she has dispossessed property that she is accused of stealing cannot by itself satisfy the requirement of taking the property by force or fear but can be considered as evidence as to any of her prior actions if the jury deems that appropriate."

Singleton contends that this special pinpoint instruction was insufficient if not counterproductive because it did not explicitly tell the jury not to consider the evidence she used force during the second altercation. However, in advancing this argument,

13

Singleton overlooks a fact that her trial counsel implicitly acknowledged.[3] Her conduct during the second altercation was relevant to the jury's analysis of the force element of the robbery charge even though it did not constitute the force required to commit robbery. Evidence that Singleton used force during the second altercation and then lied to the police about the gravity and nature of the injuries she inflicted on Zimmer supported the prosecutor's theory that Singleton was lying when she testified that she did not kick or even try to kick Zimmer during the first altercation in the mall. The language in the court's special instruction reflects this fact while at the same time making it clear that the force used during the second altercation outside the mall was not enough *by itself* to satisfy the force element of the robbery charge.

The arguments of counsel are another factor supporting the conclusion that it is not reasonably likely this jury was misled. Both trial counsel focused their arguments on the question whether Singleton used force during the first altercation inside the mall. Indeed, as noted in our factual summary, the trial court made an in limine order precluding counsel from arguing that the second altercation satisfied the force or fear requirement of the robbery charge. On appeal, Singleton does not contend that the prosecutor ever violated this in limine order. In fact, she does not even acknowledge that the order was made.

Singleton does take the position, however, that "[t]he prosecution argued that the bite marks appellant left on the manager were evidence of her guilt." To support this contention, Singleton relies on a part of the prosecutor's closing argument which challenged the credibility of Singleton's trial testimony. The prosecutor pointed out that Singleton had told the police that she only scraped her teeth against Zimmer's hand when in fact she bit him so hard she broke the skin. The prosecutor then argued that Singleton's attempt to diminish the damage she inflicted during the second incident suggested that she was also being dishonest about whether she actually kicked Zimmer

---

[3] Not only did Singleton's trial counsel request this special instruction, he expressly approved the language the trial court used.

14

during the first incident.  However, the prosecutor never suggested that the biting itself satisfied the force element of the robbery charge.

A third indication that the jury was not misled came from the jury itself.  As reflected in our factual summary, the jury asked four questions about the robbery charge.  One of those questions asked whether the "reason" for the force was relevant to the robbery charge.  The court responded that the reason had to be one of those set forth in CALCRIM NO. 1600, either to " 'take the property' " or " 'to prevent the person from resisting.' "  This exchange and the other related questions and answers foreclosed the possibility that the jury was misled by the escape rule.  Indeed, after these questions were answered, the jury asked to review specific testimony from the percipient witnesses which pertained *only* to the events that happened inside the mall—i.e., during the period that Singleton retained possession of the stolen property and was attempting to escape with it by resisting Zimmer's efforts to reclaim it.

### 4. *People v. Hodges*

On appeal, Singleton relies heavily on *People v. Hodges* (2013) 213 Cal.App.4th 531 (*Hodges*).  She claims this case holds that the escape rule comes into play only if the defendant is separately charged with an ancillary consequence of the robbery and that it also illustrates that giving an escape rule instruction outside that discrete context is prejudicially misleading.

In *Hodges, supra*, 213 Cal.App.4th 531, a Safeway store security guard saw defendant take items from the store and then followed him outside to the parking lot.  The guard confronted the defendant while he was sitting in his car but refused to take the goods back and let the defendant leave.  When defendant started his car, the guard blocked his passage.  Then the defendant got out of his car and tossed the items, hitting a second security guard who had come to assist.  When the defendant got back in his car and tried to leave, the second guard reached inside the car and attempted to take the keys.  As he did so, the defendant moved the car into reverse causing the open door to strike the guard, propelling him up and over the door onto the ground.  (*Id.* at p. 536.)

While the *Hodges* jury was deliberating whether the defendant committed a robbery, it asked a question about the force or fear element of the charge. (*Hodges, supra*, 213 Cal.App.4th at p. 538.) Specifically, the jury stated that the evidence showed that the defendant used force after he had surrendered the goods and then it asked whether the " 'timing/sequence of [the] events' " was relevant, whether it mattered if the theft occurred first and then the force/fear. (*Ibid*.) Over a defense objection, the trial court gave the jury this answer: " 'With regard to Count 1, Penal Code 211, the theft is deemed to be continuing until the defendant has reached a point in which he is no longer being confronted by the security guards.' " (*Ibid*.) Shortly thereafter, the jury returned a guilty verdict on the robbery charge. (*Ibid*.)

The *Hodges* court reversed the robbery conviction, finding that the trial court abused its discretion by giving the jury an irrelevant, incomplete and misleading answer to its question.[4] (*Hodges, supra*, 213 Cal.App.4th at pp. 541-543.) The trial court's response was irrelevant because "the jury's question did not pertain to the duration of the theft in relation to ancillary consequences." (*Id*. at p. 543.) It was incomplete because it "failed to address the crux of the jury's inquiry," and it was "misleading because it allowed the jury to conclude defendant was guilty of robbery without regard to whether defendant intended to permanently deprive the owner of the property at the time the force or resistance occurred." (*Ibid*.)

In this case, Singleton contends that the escape rule instruction had the same impermissible effect as the trial court's answer to the jury's question in *Hodges*. We disagree. First, in *Hodges, supra*, 213 Cal.App.4th at page 543, the trial court's statement

_____

[4] In reaching its conclusion, the *Hodges* appellate court observed that the trial court's answer was based on the escape rule, which " 'defines the *duration* of the underlying felony, *in the context of certain ancillary consequences of the felony* [citation], by deeming the felony to continue until the felon has reached a place of temporary safety. [Citation.]' " (*Hodges, supra*, 213 Cal.App.4th at p. at 542.) But, contrary to Singleton's contention in this case, the *Hodges* court did not hold that the escape rule applies only if the defendant is *separately* charged with an ancillary consequence of a crime.

16

was irrelevant because it was not responsive to the jury's question and because there was no evidence in that case that the defendant used force to retain possession of the stolen goods while he was trying to escape with them. By contrast, the escape rule instruction that was given to the jury in this case was just one part of a set of CALCRIM instructions pertaining to the robbery charge, it was an accurate statement of the law given without objection, and it was relevant to the evidence that Singleton used force to resist the victim's effort to reclaim the stolen goods.

Second, in *Hodges*, the trial court's answer was misleading because it allowed the jury to find the defendant guilty whether or not he intended to permanently deprive the owner of property when the force was used. (*Hodges, supra*, 213 Cal.App.4th at p. 543.) Here, by contrast, the challenged instruction did not have that effect because (1) the instruction itself was modified by the trial court to clarify that the escape rule did not alter in any way, the prosecutor's burden of proving each element of the robbery charge as outlined in the prior instruction which contained a clear an accurate explanation of both the force or fear requirement and the intent element of the robbery charge; (2) the trial court also gave an additional pinpoint instruction which told the jury that the force or fear requirement was not satisfied by force that Singleton used after she was dispossessed of the stolen property; and (3) the parties were precluded by court order from ever arguing that Singleton's use of force during the second incident was part of the robbery.

Perhaps because this case is so different from the facts of *Hodges*, Singleton relies on a hypothetical scenario that was addressed in a footnote in the *Hodges* decision. There, the court stated: "Consider the following hypothetical: A person leaves a store without paying for goods, drops the goods when confronted by a security guard, and flees; the guard gives chase and at some point during the pursuit, the person uses force to resist the pursuing guard's attempt to detain him. Under this hypothetical, the escape rule, concerning the *duration* of the offense, is not in play because no robbery was *committed*, there being no evidence that the person intended to deprive the owner of the property at the time force was used." (*Hodges, supra*, 213 Cal.App.4th at p. 543, fn. 4.)

17

This hypothetical does not assist Singleton because it does not describe the facts of this case. As demonstrated by our analysis above, the escape rule did "come into play" in this case because there was substantial evidence that Singleton used force after she took the jeans while she was trying to escape when Zimmer confronted her in the mall, and that she used that force with the intention of permanently depriving the owner of the property she had stolen. In addition, the escape rule instruction that was used here was neither misleading nor incomplete for the many reasons we have outlined above.

## B. *Jury Unanimity*

Singleton contends the trial court violated its sua sponte duty to instruct the jury that it had to unanimously agree on the act that constituted force or fear.[5]

A trial court has a sua sponte duty to instruct on jury unanimity "when the circumstances so warrant." (*People v. Davis* (2005) 36 Cal.4th 510, 561 (*Davis*); see also Cal. Const., art. I. § 16.) Here, Singleton argues that the circumstances warranted a unanimity instruction because the jury heard evidence of three "separate acts" that potentially satisfied the force element of robbery: First, there was evidence that she exerted force during the first altercation in the mall when Zimmer tried to pull her purse away and she held on as she fell down to the ground. Second, there was evidence that Singleton kicked Zimmer in the groin during the first altercation. Third, there was evidence that Singleton bit Zimmer's hand in the parking lot.

As a factual matter, we reject the contention that the jury could have convicted Singleton of robbery based on her use of force in the parking lot. For all the reasons outlined above, that did not happen. Furthermore, Singleton's attempt to create a unanimity problem by parsing her conduct during the first altercation into separate acts of force is legally erroneous.

---

[5] Without separate argument, Singleton also contends that the trial court "refused" a defense request to give a unanimity instruction. For the record, we reject that contention. As reflected in our factual summary, the trial court and both counsel expressly agreed on the record that a unanimity instruction was not required in light of the court's special instruction and in limine order regarding the limited use of the evidence pertaining to the second altercation in the parking lot.

18

"For decades now, California law has conditioned the duty to give a unanimity instruction on whether the evidence at trial indicates that the defendant committed more than one ' "discrete criminal event." ' [Citation.] Where the evidence suggests that the defendant might have committed more than one crime, the court must instruct the jury that it must agree on *which* of the acts—and, hence, which of the crimes—the defendant committed. [Citations.] Otherwise, a guilty verdict might not reflect that all 12 jurors agreed that the defendant committed the same crime. [Citation.]" (*People v. Quiroz* (2013) 215 Cal.App.4th 65, 73.)

Here, Singleton's unanimity argument is not based on evidence that she committed more than one discrete criminal offense, but rather on evidence that more than one of her acts could have constituted an element of the charged offense. Where "the evidence suggests that a defendant committed only one discrete criminal event—but may have done so in one of several different ways—no unanimity instruction is required. [Citations.] Unanimity is not required in this situation even if the jurors might conclude that the defendant is guilty based on different facts, or on different findings about the acts the defendant committed or his mental state. [Citations.] That is because, in this situation, the jury's guilty verdict will still reflect unanimous agreement that the defendant committed a single crime." (*People v. Quiroz, supra*, 215 Cal.App.4th at pp. 73-74.)

Singleton relies on *People v. Davis, supra*, 36 Cal.4th 510, without considering its facts. In that case, a defendant charged with robbery was entitled to a unanimity instruction because the "evidence disclosed two distinct takings," and the "prosecutor argued that the jury could rely on either theory to convict defendant" of the single robbery that was charged. (*Id*. at pp. 561-562.) The omission of the unanimity instruction was prejudicial because the reviewing court could not determine from the record whether some jurors found the defendant guilty of robbery based on the first taking while others relied solely on defendant's second taking. (*Ibid*.)

*Davis* and other authority Singleton cites recognizes that a unanimity instruction is necessary "to prevent the jury from amalgamating evidence of multiple offenses, no one

19

of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count." (*People v. Deletto* (1983) 147 Cal.App.3d 458, 472.) But this line of authority is inapposite because the present case does not involve evidence of more than one robbery. Here, there was only a single taking of property from the Buckle store in the mall. Thus, we reject Singleton's contention that the trial court had a sua sponte duty to give a unanimity instruction.

## C.     *The Trial Court's Answer to the Jury's Question*

As noted in our factual summary, the jury asked four related questions about the robbery charge. One of those questions was: "What is [the] definition of 'force or fear'?" The trial court answered: "There is no 'legal' definition for 'force' or 'fear.' The jury should apply the 'ever[y] day meaning' to those terms."

On appeal, Singleton contends that the trial court had an obligation under Penal Code section 1138 (section 1138) to provide the jury with a better answer to this question by fashioning substantive definitions of the terms force or fear.[6]

The appellate record reflects that the trial court and counsel discussed the jury's questions before the court answered them. However, there is no notation in the clerk's transcript or any other part of the record which even suggests that Singleton's defense counsel objected to any of part of the typewritten response that was provided to the jury. If Singleton did not waive this claim of error by failing to object in the trial court, it fails on the merits.

" 'When a jury asks a question after retiring for deliberation, "[s]ection 1138 imposes upon the court a duty to provide the jury with information the jury desires on points of law." [Citation.]' [Citation] 'This does not mean the court must always

---

[6] Section 1138 states: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. . . . But a court must do more than figuratively throw up its hands and tell the jury it cannot help. . . . It should decide as to each jury question whether further explanation is desirable, or whether it should merely reiterate the instructions already given.' [Citation.] 'We review for an abuse of discretion any error under section 1138. [Citation.]' [Citation.]" (*Hodges, supra*, 213 Cal.App.4th at p. 539.)

Applying these rules here, the trial court did not abuse its discretion. "The terms 'force' and 'fear' as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors." (*People v. Anderson* (1966) 64 Cal.2d 633, 640.) Furthermore, " 'force,' " the only term that was pertinent in this case, "is a factual question to be determined by the jury using its own common sense." (*People v. Mungia*, (1991) 234 Cal.App.3d 1703, 1709.)

Thus, the original instructions regarding this element of the robbery charge were full and complete and the trial court had discretion to decide whether further explanation was desirable. When the court's answers to the four jury questions are read together, as they clearly were meant to be, they demonstrate that the court made the reasonable decision to refer the jury to the relevant portions of the instructions that had already be given. As thoroughly discussed above, the court and parties were careful to tailor those original instructions to account for the unique facts of this case and to ensure that the jury would not misuse the evidence regarding Singleton's use of force after she abandoned the stolen property.

On appeal, Singleton contends that any presumption that this jury had some common-sense understanding of the meaning of force was rebutted because the jury made it clear by their question that they did not understand what the term means. We disagree. We read the jury's question as asking whether the law assigns some special technical meaning to these terms. The trial court did answer that question by telling the

21

jury to employ an every-day meaning. (See, e.g., *People v. Mungia, supra*, 234 Cal.App.3d at p. 1709.)

Finally, Singleton argues that a legal definition of force can be fashioned from language in published California decisions that discuss the quantum of force necessary to prove robbery. (See, e.g., *People v. Anderson* (2011) 51 Cal.4th 989, 995 ["The law does require that the perpetrator exert some quantum of force in excess of that 'necessary to accomplish the mere seizing of the property' "]; *People v. Lescallett* (1981) 123 Cal.App.3d 487, 491 [" 'The degree of force used is immaterial. All the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance . . . .' "].)

Again Singleton cites these cases without discussing them. They do not purport to establish a universally applicable definition of the force element of robbery. Nor do they have anything do with the trial court's discretion to answer questions from a jury. Thus, they do not alter our conclusion. The trial court did not abuse its discretion by answering the jury's questions the way that it did.

**D.**     ***The Prosecutor's Closing Argument***

Finally, Singleton contends the prosecutor committed misconduct during closing argument by misstating the law regarding the People's burden of proving the elements of the robbery charge.

**1.**     ***Issue Presented***

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44; see also *People v. Wilson* (2005) 36 Cal.4th 309, 337; *People v. Farnam* (2002) 28 Cal.4th 107, 167.)

Here, Singleton contends that her federal due process rights were violated because the prosecutor misstated the law regarding the People's burden of proof during her

22

closing argument to the jury. " 'To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.' [Citation.] 'Prosecutors have wide latitude to discuss and draw inferences from the evidence at trial. [Citation.] Whether the inferences the prosecutor draws are reasonable is for the jury to decide. [Citation.]' [Citation.]" (*People v. Wilson, supra*, 36 Cal.4th at p. 337.)

### 2. *Background*

During her closing argument, the prosecutor made these remarks: "With regard to the kicking of the groin, you believe Mr. Zimmer[], you believe that the officer's statement, she was trying to kick him. She said she didn't at that point because she's minimizing. Or you believe Miss Singleton's completely different version now on the stand. 'Oh, I'm stomping my foot because I'm trying to keep my balance.' [¶] They're kind of mutually exclusive. You believe him or you believe her with regard to that. You decide. You have the witness instruction. You have the instruction about bias. You have the fact that everyone else's story . . . ."

Defense counsel interrupted this argument by lodging an objection that the prosecutor was misstating the law. The trial court overruled the objection, stating: "They have to make a credibility decision." The prosecutor then completed this part of her argument, stating: "It's an issue of credibility. They can't both be right."

### 3. *Analysis*

Singleton contends that the prosecutor's argument was misconduct because she misstated the law regarding the reasonable doubt standard of proof. Singleton reasons that the effect of the prosecutor's "either/or" argument about the trustworthiness of Zimmer's account and her own account of the incident was to reduce the People's burden to a preponderance of the evidence standard of proof. In other words, Singleton contends, the prosecutor told the jury to convict on the robbery charge if Zimmer's account was " 'more likely to be true than not true.' " Without any independent analysis,

23

Singleton also contends that this argument mischaracterized the presumption of innocence.

" '[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements. [Citation.]' [Citation.]" (*People v. Hill, supra,* 17 Cal.4th at pp. 829-830.) However, "[a]t closing argument a party is entitled both to discuss the evidence and to comment on reasonable inferences that may be drawn therefrom. [Citations.]" (*People v. Morales, supra*, 25 Cal.4th at p. 44.) Furthermore, a " 'prosecutor is entitled to comment on the credibility of witnesses based on the evidence adduced at trial.' [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1191-1192.)

Applying these rules here, we find that it is not reasonably likely that the jury interpreted the prosecutor's comments in the way Singleton contends. The prosecutor's comments pertained to a factual conflict in the evidence: Zimmer testified that Singleton kicked him in the groin and Singleton testified that she never kicked or even attempted to kick Zimmer. The prosecutor's observation that these two pieces of evidence cannot both be true was an accurate statement about the evidence. Furthermore, her argument had nothing to do with the legal standard of proof beyond a reasonable doubt. Instead, she simply made the factual argument that Zimmer's account of the incident was more credible than Singleton's, an argument that was based on evidence adduced at trial. Therefore we reject Singleton's contention that this aspect of the prosecutor's argument was misconduct.

## IV.  DISPOSITION

The judgment is affirmed.

_____
Haerle, J.

We concur:

_____
Kline, P.J.

_____
Richman, J.